UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GERALD P. ZIECHE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-07-3985 |
| | § | |
| BURLINGTON RESOURCES INC. | § | |
| EMPLOYEE CHANGE IN CONTROL | § | |
| SEVERANCE PLAN, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court are Defendant ConocoPhillips Company's ("ConocoPhillips") Motion for Summary Judgment (Doc. 48) and Defendants Wachovia Bank, N.A. ("Wachovia") and Burlington Resources, Inc. Employee Change in Control Severance Plan's (the "BR Plan") Motion for Summary Judgment (Docs. 49–51). Upon review and consideration of these motions, the responses and replies thereto, the relevant legal authority, and for the reasons explained below, the Court finds that Defendants' motions for summary judgment should be granted.

I.  Background and Relevant Facts

This is an action to recover severance benefits under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(a)(1)(B).  The Court has supplemental jurisdiction over Plaintiff's breach of contract claims.  28 U.S.C. § 1367(a).

Plaintiff Gerald P. Zieche ("Zieche") was employed as a geologist by Burlington Resources, Inc. ("Burlington") from 1981 until he resigned in August of 2006.  (Doc. 1 ¶ 4.1.) As an employee, Zieche was a participant in and beneficiary of the BR Plan.  (*Id.* ¶ 4.11.)

In anticipation of a possible purchase of or merger with Burlington by another company,

the BR Plan was "established, amended and restated[.]" (*Id.* ¶ 4.9; Doc. 49-11 at 2–17.) Among other things, the BR Plan provided that a participant was entitled to a specified severance benefit if the participant's employment was terminated within two years after a change in control of the company. (Doc. 1 ¶ 4.12; Doc. 49-11 at 8–11.) The participant was also entitled to the severance benefit even if the participant quit for good reason. (Doc. 1 ¶ 4.13.)

"Good Reason" is defined in the BR Plan to include a "reduction in the participant's annual base salary or a material reduction in benefits provided employees immediately prior to the Change in Control" or a "change in the Participant's position or responsibilities which represents a substantial reduction of the Participant's position or responsibilities immediately prior thereto, except in connection with the termination of the Participant's employment . . . by the Participant other than for Good Reason." (*Id.* ¶ 4.14; Doc. 49-11 at 6, ¶ 2.12.)

In mid-December of 2005, ConocoPhillips announced its intention to purchase Burlington. (Doc. 1 ¶ 4.7.)

On February 7, 2006, Zieche was paid a discretionary bonus of $62,494.00. (Doc. 48-3 at 3.)

Effective March 1, 2006, Zieche was promoted by Burlington to the position of geologic consultant, the highest technical level at Burlington for a geoscientist. (Doc. 1 ¶ 4.2–4.3.) Zieche's new base salary was $184,631.71, an increase of eleven percent. (Doc. 48-3 at 2.)

On March 28, 2006, ConocoPhillips sent Zieche a letter (the "Continuation of Employment Letter") expressing its intention to retain Zieche as a manager of Eastern U.S. exploration with compensation at a salary grade level of nineteen and a base monthly salary of $15,386.00, or $184,632.00 per year, the same as his salary at Burlington, plus eligibility for various incentives and bonuses. (*Id.* ¶¶ 4.15–4.16; Doc. 48-2 at 48–49.) The Continuation of

Employment letter also stated that "Burlington Resources will pay your 2006 bonus 30 days after closing and this will be full and final payment of the 2006 bonus under the Burlington Resources Incentive Compensation Plan.") (*Id.*)

Also on March 28, 2006, Zieche was informed that his current "base salary exceeds the maximum of the salary range for [his] grade level" and that accordingly he would be "ineligible for annual salary increases" and his incentive payments would be "capped at the maximum of the range." (Doc. 48-9 at 8.)

On March 29, 2006, Zieche signed a letter (the "Retention Letter") from ConocoPhillips informing him of the merger and notifying him that he would receive a retention bonus of $184,632, if he remained employed for one year. (*Id.* ¶ 4.21; Doc. 48-3 at 4–6). The letter further specified that Zieche would receive the bonus even if he resigned from the company for "Good Reason." (*Id.*) Exhibit A of the Retention Letter stated that:

> "Good Reason" means, without your prior written consent, (i) the relocation of your place of employment by more than 50 miles, (ii) any reduction in your annual rate of base salary from your annual rate of base salary in effect on the date hereof, or (iii) any reduction in your target bonus opportunity percentage from your target bonus opportunity percentage in effect on the date hereof.

(Doc. 48-3 at 6.)

The purchase of Burlington by ConocoPhillips closed on March 31, 2006. (Doc. 1 ¶ 4.8.)

On August 15, 2006, Zieche gave ConocoPhillips notice of his termination of his employment and applied for benefits under the plan, including severance benefits and the retention bonus. (Doc. 1 ¶ 4.27; Doc. 48-11 at 2–14.) Zieche's letter argued he was terminating his employment for "Good Reason" as defined in Exhibit A of the "Retention Letter" of March 31, 2006, because he had been assigned "a lower percentage for his target opportunity bonus." (Doc. 48-11 at 2–3.) Specifically, Zieche wrote:

> I have suffered a material reduction in the following benefits provided employees immediately prior to the Change in Control:
>
> - reduced company contribution to 401(k)
> - reduced time off due to loss of the 9/80 work schedule
> - reduction of health insurance coverage and increased cost thereof
> - reduced use of company planes
> - loss of Christmas bonus
> - reduction of target bonus initiative
> - reduced probability of receiving restricted stock and reduced award     levels thereof
> - loss of option awards
> - loss of phantom stock awards
> - loss of long-term Petrotech incentives
> - loss of basic life insurance
> - loss of business travel insurance

(*Id.* at 9.)

On September 12, 2006, ConocoPhillips denied Zieche's request for the retention bonus.

(Doc. 48-16 at 2–3.)  ConocoPhillips wrote:

> The Continuation of Employment Letter did not set a maximum target bonus opportunity percentage for Mr. Zieche.  The Continuation of Employment Letter was clear that none of the parameters regarding Mr. Zieche's bonus would be changing in 2006.  While the Continuation of Employment Letter did infer [*sic*] that a move from the Burlington Resources bonus arrangements to those of ConocoPhillips might occur in the future, perhaps in 2007, this did not act to reduce Mr. Zieche's target bonus opportunity percentage.  We cannot tell what might have happened after 2006 (ConocoPhillips could have changed its bonus arrangements, for instance, either for eligible participants as a group or for Mr. Zieche in particular or it could have continued the Burlington Resources [Incentive Compensation Plan]), but we can see that Mr. Zieche's bonus for 2006 has already been set and paid in accordance with the terms of the Plan as in effect on the date of the Retention Bonus Letter.
>
> Therefore, at the time of Mr. Zieche's resignation, he did not meet the criteria set in the Retention Bonus Letter for having Good Reason to resign.

(*Id.* at 3.)

On December 1, 2006, Wachovia, as trustee, similarly denied Zieche's application for severance benefits.  (Doc. 48-15 at 1–5; Doc. 1 ¶ 4.28; Doc. 48-10 at 3 ¶ 6.)   Wachovia

determined "that there has not been a material reduction in benefits" or position and therefore that Zieche's had "not substantiated his claim for severance benefits based on Good Reason as defined in the Plan." (Doc. 48-15 at 4–5.)

On November 26, 2007, Plaintiff Zieche filed suit in this Court seeking unspecified damages and attorneys' fees. (Doc. 1 at 8.) Defendants now move for summary judgment. (Docs. 48–51.)

II. Standard of Review

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the

essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, however, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323–24. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the nonmoving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." W*ebb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998) (overruled on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2414 (2006)). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075). The nonmovant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871,

889 (1990). Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988). The nonmoving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). There is a "genuine" issue of material fact if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

III.  Discussion

    A.  Zieche's Claims Against ConocoPhillips

As a preliminary matter, the threshold inquiry in an ERISA denial of benefits claim is who is the proper defendant. *See Johnson v. Hartford Life & Accident Ins. Co.*, No. H-09-57, 2009 U.S. Dist. LEXIS 18913, *6–7 (S.D. Tex. Mar. 4, 2009). The Fifth Circuit's district courts have uniformly found that the only proper defendant in an ERISA enforcement action is the plan itself, regardless of control over the plan. *See Trevino* 2009 U.S. Dist. LEXIS 98738 at *51–54; *see also Johnson,* 2009 U.S. Dist. LEXIS 18913 at*6-9; *Lee v. Tyco Elecs. Power Sys, Inc.,* No. 3:04-CV-2260-D, 2006 U.S. Dist. LEXIS 44477, *23–24 (N.D. Tex. June 20, 2006) (noting that

even in circuits "that have expanded the universe of proper defendants have included only parties that control the administration of the plan."); *Bradley v. Summit Inst. for Pulmonary Med. & Rehab.*, No. 03-1577, 2005 U.S. Dist. LEXIS 42923, *9 n.7 (W.D. La. Sept. 13, 2005) (observing that "[a]t the very least, as is required in other circuits, an employer must have sufficient discretionary authority over the plan to qualify as a plan fiduciary").

Here, ConocoPhillips did not administer the Severance Plan nor did it make a determination regarding Zieche's entitlement to benefits under the Severance Plan. Rather, Wachovia, as Trustee, made the final determination regarding Zieche's rights under the Severance Plan. Accordingly, ConocoPhillips is not the proper defendant for this claim, and summary judgment in favor of ConocoPhillips is proper regarding Zieche's ERISA denial of benefits claim.

Next, ConocoPhillips moves for summary judgment pursuant on Zieche's breach of contract claim. (Doc. 48 at 10.) In order to prove a breach of contract claim, Plaintiff must establish: (1) the existence of a valid contract; (2) performance or tendered performance by Plaintiff; (3) breach of the contract by ConocoPhillips; and (4) damages sustained by Plaintiff as a result of the breach. *See Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

ConocoPhillips argues that it did not reduce Zieche's salary or discretionary performance bonus, that Zieche voluntarily resigned without "Good Reason" on August 15, 2006, and that, accordingly, it was justified is denying Zieche's request for the retention bonus. Zieche responds that the salary cap constituted a reduction in salary. (Doc. 54 at 5.) Zieche, however, received his full 2006 performance bonus and acknowledges that his 2006 bonus percentage increased

from 30% in 2005 to 40% in 2006. (*See* Zieche Dep. at 37, 63–64, Doc. 48-1 at 38, Doc. 48-2 at 15–16.) As a matter of law, then, there was no reduction in Zieche's salary or bonus percentage and Zieche's claims against ConocoPhillips must be dismissed.

  B. Zieche's Claims Against Wachovia and the BR Plan

"[D]enial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "Trust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers." *Id.* at 110 (citing Restatement (Second) of Trusts § 187 (1959)). Where the plan confers discretionary power on the plan administrator to determine eligibility for benefits or to construe the language of the plan, the standard of review is abuse of discretion. *Firestone Tire*, 489 U.S. at 115; *Gosselink v. American Tel. & Tel. Inc.*, 272 F.3d 722, 726 (5th Cir. 2001).

Here, Wachovia, as trustee, had discretionary authority to pay beneficiaries under the BR Plan:

> After a Change of Control and notwithstanding any other provision of this Agreement, the Trustee shall, without direction from the Company or an Affiliate, to the extent funds are available in the Equitable Share(s) of such Plan or Plans, make payments to any disbursing agent previously retained by the Company for such purpose or, in the Trustee's sole discretion, directly to the Plan Participants and beneficiaries in such manner and in such amounts as the Trustee shall determine they are entitled to be paid under the Plans, based on the most recent Participant Data furnished to the Trustee by the Company and any supplemental information furnished to the Trustee by a Participant or beneficiary upon which the Trustee may reasonably rely in making such determination.

(Doc. 49-12 at 10, ¶ 5.2.) Accordingly, the abuse of discretion standard applies to the Wachovia's denial of Zieche's severance benefits.

The issue here is whether Wachovia's decision was consistent with a fair reading of the

BR Plan, which defined "Good Reason" as a "material reduction in benefits provided employees immediately prior to the Change of Control" or a change in position or responsibilities representing "a substantial reduction of [Zieche's] position or responsibilities." (Doc. 49-11 at 6 ¶ 2.12.)  Because the Court finds there was no material reduction in Zieche's position, responsibilities, or benefits, as of the date of Zieche's voluntary termination, there was no abuse of discretion by Wachovia, and therefore his claims must be dismissed.

IV.  Conclusion

      Accordingly, the Court hereby ORDERS that Defendant ConocoPhillips Company's Motion for Summary Judgment is GRANTED.  (Doc. 48.)

      The Court further ORDERS that Defendants Wachovia Bank, N.A. and Burlington Resources, Inc. Employee Change in Control Severance Plan's Motion for Summary Judgment is GRANTED.  (Docs. 49–51.)

      SIGNED at Houston, Texas, this 1st day of March, 2011.

                                      MELINDA HARMON
                                      UNITED STATES DISTRICT JUDGE